IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ANDRE JACKSON-EL,** | § | |
| **TDCJ No. 02206208,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-22-CV-935-RP** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## <u>ORDER</u>

Before the Court are Petitioner Andre Jackson-El's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Response (ECF No. 12), Petitioner's Reply (ECF No. 37), and Petitioner's Motion to Stay (ECF No. 38). Having reviewed the record and pleadings submitted by both parties, the Court denies Petitioner's federal habeas corpus petition under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner's Motion to Stay is also denied.

## I.  Background

In January 2017, Petitioner was charged by indictment with one count of intentional murder. The indictment included four enhancement paragraphs listing Petitioner's prior convictions for: (1) assault of a public servant (September 2010, Travis County); (2) assault family violence (February 2006, Travis County); (3) two counts of burglary of a habitation (August 2001, Travis County); and (4) delinquent conduct (by a juvenile) constituting a felony offense (September 1999, Travis County). (ECF No. 16-12 at 10-11.) On June 21, 2018, a jury convicted

1

Petitioner of intentional murder; he pleaded true to two enhancement charges; and the jury

sentenced him to ninety-nine years imprisonment. *State v. Jackson*, No. D-1-DC-16-302285

(331st Dist. Ct., Travis Cnty., Tex. June 21, 2018). (ECF No. 16-12 at 75-76.) The following is a

summary of the factual allegations against Petitioner:

> The evidence at trial showed that Dequincy Fields was a high-level drug dealer in
> north Austin. Appellant was a mid-level drug dealer associated with Fields.
> Kenneth Johnson and Maurice Taylor were low-level drug dealers associated with
> Fields and appellant.
>
> One November night, appellant, Johnson, and Taylor met at a Studio 6 motel,
> where appellant was staying with his wife, with a plan to go sell drugs in a nearby
> neighborhood. As they left the motel, appellant retrieved a gun from underneath the
> hood of a blue Buick, which, the evidence showed, was registered to Fields's
> girlfriend at Fields's address. The three men left together in the Buick; appellant
> was driving, Johnson was sitting in the passenger seat, and Taylor was sitting in the
> back seat.
>
> Testimony from Taylor reflected that at one point during the drive, appellant
> confronted Johnson, asking him, "Why'd you do it?" In response, Johnson
> attempted to get out of the car. Before he could, appellant shot him multiple times
> with the gun that he had retrieved from under the hood. Appellant then drove
> around for a few minutes until he stopped the car in a nearby residential
> neighborhood. He and Taylor then pushed Johnson's body out of the car and drove
> to Fields's home.
>
> A resident of the neighborhood saw Johnson's body as he drove past it on his way
> home and called 911. Police officers responded to the location and found Johnson
> in the street, covered in blood and appearing lifeless. Attempts to resuscitate him
> were unsuccessful. A subsequent autopsy confirmed that Johnson died as a result of
> multiple gunshot wounds. He sustained five gunshot wounds: four entered the left
> side of his neck and one entered his left armpit. The medical examiner opined that
> two of the gunshots—one that entered his neck and transected his brain stem and
> one that entered his armpit, penetrated his chest cavity, and hit both lungs—would
> have been fatal in and of themselves.
>
> At trial, Taylor testified about the events of the night. In addition, residents from the
> neighborhood where Johnson's body was dumped testified about finding the body
> and calling 911; the motel manager testified about her familiarity with the
> individuals involved; Johnson's sister testified about her brother's concerns about
> his safety before the shooting; police officers testified about the crime scene and
> their investigation, several witnesses testified about the disposal of the Buick;
> several expert witnesses testified about electronic evidence recovered during the

> investigation--including information related to the usage and location of the cell phones of the individuals involved that night; and the medical examiner testified about Johnson's wounds and the manner and cause of his death. Appellant did not testify at trial or present any witnesses on his behalf.

*Jackson v. State*, No. 03-18-00417-CR, 2020 WL 2203306 at *1-2 (Tex. Ct. App.--Austin, May 6, 2020, pet. ref'd). Petitioner's conviction was affirmed on direct appeal.[1] *Id.* On January 13, 2021, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review (PDR). *Jackson v. State*, No. PD-0612-20 (Tex. Crim. App. Jan. 13, 2021).

On July 20, 2021, Petitioner filed a pro se state habeas corpus application, listing the following fourteen grounds of relief:

1. The trial court lacked jurisdiction because the empaneling judge failed to execute and file a valid and properly authenticated oath of office before empaneling the grand jury that returned Petitioner's indictment, thereby denying him his constitutional right to due process.

2. Appellate counsel was ineffective for failing to file and present a motion for new trial based on trial counsel's ineffectiveness at trial as well as investigate and file a motion in arrest of judgment because the trial court lacked jurisdiction due to Petitioner's defective indictment.

3. Appellate counsel deprived Petitioner of client autonomy by failing to file a motion for new trial/motion in arrest of judgment as directed by Jackson.

4. The prosecution willfully suppressed exculpatory/favorable evidence which denied Petitioner the rights to confrontation, a fair trial, and due process.

5. Trial counsel was ineffective in failing to investigate and discover exculpatory/favorable evidence which denied Petitioner the right to confrontation, a fair trial, and due process.

6. The prosecution used and/or failed to correct perjured testimony on numerous occasions which left false impressions with the jury and denied Petitioner a fair trial and due process.

7. Trial counsel was ineffective for failing to object to the State's improper jury argument that Petitioner's "calling car" was a 9mm gun because it was calculated to cause the jury to speculate about matters outside the record.

---

[1] The court modified the judgment to correct non-reversible error.

3

8. Trial counsel was ineffective for failing to lay the proper predicate to impeach the testimony of Maurice Taylor and Nathan Sexton based on bias, interest, and prior inconsistent statements.

9. Trial counsel was ineffective for failing to investigate the crime scene, interview Laron Caro and introduce into evidence the testimony of Laron Caro as to the type of seats and interior in the 2003 Buick Century, because the testimony could have been used to impeach Maurice Taylor's testimony.

10. Trial counsel was ineffective for failing to request or object to the omission of an accomplice witness instruction and a limitation on the application of the law of the parties instruction in Petitioner's jury charge.

11. Trial counsel was ineffective for failing to object to the admission of the State's Grand Jury-No Bill for Maurice Taylor into evidence on the basis that it was prejudicial and irrelevant to Petitioner's trial.

12. Trial Counsel was ineffective for failing to object to the admission of Kadijah Johnson's testimony about the deceased's character because it was improper character evidence that was irrelevant, inflammatory, and inadmissible.

13. Trial counsel was ineffective for failing to object to the admission of living photos of the deceased because they were irrelevant, inflammatory, and inadmissible.

14. The prosecution committed egregious misconduct by misrepresenting evidence on numerous occasions which left multiple false impressions with the jury and denied Petitioner a fair trial and due process.

(ECF No. 16-8 at 17 to 16-10 at 10.) On December 22, 2021, the state habeas court filed its Findings of Fact, and recommended denying Petitioner's state habeas application. (ECF No. 16-11 at 14-25.) On February 2, 2022, the TCCA denied Petitioner's state habeas application without written order on the findings of the trial court without hearing and on the court's independent review of the record. *Ex parte Jackson*, No. WR-92, 931-02 (Tex. Crim. App. Feb. 2, 2022). (ECF No. 15-13.)

On September 9, 2022, Petitioner filed his federal habeas petition, listing the following eleven grounds of relief:

1. The trial court lacked jurisdiction because the judge failed to execute and file a properly authenticated oath of office before empaneling the grand jury that returned Petitioner's indictment.

2. Appellate counsel was ineffective or failing to (1) file and present a motion for new trial based on trial counsel's ineffectiveness and (2) investigate and file a motion in arrest of judgment because the trial court lacked jurisdiction due to Petitioner's defective indictment.

3. Appellate counsel deprived Petitioner of client autonomy by failing to file a motion for new trial/motion in arrest of judgment as directed by Petitioner.

4. The prosecution willfully withheld exculpatory/favorable evidence which denied Petitioner his rights to confrontation, a fair trial, and due process.

5. Trial counsel was ineffective to failing to investigate and discover exculpatory/favorable evidence which denied Petitioner the right to confrontation, a fair trial, and due process.

6. Trial counsel was ineffective for failing to investigate the crime, interview Laron Caro, and then introduce Mr. Caro's testimony about the type of seats in the 2003 Buick Century which could have been used to impeach Maurice Taylor's testimony.

7. The prosecution either used or failed to correct perjured/false testimony on numerous occasions which left the jury with false impressions.

8. Trial counsel was ineffective for failing to lay the proper predicate to impeach the testimony of Maurice Taylor and Nathan Sexton based on bias, interest, and prior inconsistent statements.

9. Trial counsel was ineffective for failing to request or object to the omission of an accomplice witness instruction and a limitation on the law of parties instruction in Petitioner's jury charge.

10. Trial counsel was ineffective when he failed to object to the State's introduction of the Grand Jury's no bill for Maurice Taylor into evidence on the basis that it was irrelevant and prejudicial to Petitioner.

11. Trial counsel was ineffective for failing to object to the State's statement during closing argument that Petitioner's "calling card" was a 9mm gun because it caused the jury to speculate about matters outside of the record.

(ECF No. 1.) Respondent Lumpkin has filed his answer to the petition (ECF No. 12), to which

Petitioner has replied (ECF No. 37.) Petitioner has also filed a Motion to Stay, asking the Court

stay the instant habeas proceeding pending the resolution of (1) a related personal-injury lawsuit Petitioner filed in state court against his appellate counsel and (2) an amended petition and new proceedings Petitioner filed in the convicting court. (ECF No. 38.) Respondent opposes the motion. (ECF No. 39.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473

6

(2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

### 1. Trial Court Jurisdiction (claim 1)

In Petitioner's first claim, he argues the trial court lacked jurisdiction because the judge who presided over Petitioner's grand jury indictment was not properly sworn into office, thus rendering Petitioner's indictment void as a matter of law. The state habeas court made the following findings:

> 5. A collateral attack upon the qualifications of a district judge is not cognizable on habeas review. *Ex parte Lefors*, 347 S.W.2d 254, 254-55 (Tex. Crim. App. 1961).
>
> 6. The elected District Court judge presiding over this case, Hon. David Crain, was in proper possession of the office under color of title and discharged all the ordinary functions of the office at the time of indictment and throughout the trial.
>
> 7. Therefore, the judicial actions taken by Judge Crain in this case are conclusive and not subject to attack in a habeas proceeding.
>
> 8. Ground One is without merit.

(ECF No. 16-11 at 14.)

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Fifth Circuit has not held whether the rule established in *Ex parte Lefors* constitutes an independent and adequate state ground. In *Michigan v. Long*, the Supreme Court held that, when analyzing this issue, federal courts should presume their jurisdiction over a state court decision "which fairly appears to rest primarily on federal law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." 463 U.S. 1032, 1040-41 (1983). A state court decision can avoid this presumption by stating "'clearly and expressly that [its decision] is . . . based on bona fide separate, adequate, and independent grounds.'" *Coleman*, 501 U.S. at 733 (quoting *Michigan*, 463 U.S. at 1041).

It is clear from the state habeas court's findings of fact that the denial of this claim was based on an independent and adequate state ground, i.e., that, under Texas law, the qualifications of a district judge cannot be collaterally attacked through an application for writ of habeas corpus. Because the state habeas court denied these claims based on an independent and adequate state ground, this Court will review them only if Petitioner establishes cause for the default and resulting prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. *Id.* at 750.

In his reply, Petitioner relies on a different Texas law—*Enloe v. State*, 150 S.W.2d 1039 (Tex. Crim. App. 1941)—to argue that failure to consider his claim would result in a miscarriage of justice. However, the facts of *Enloe* differ from those in Petitioner's case; further, because

*Lefors* was decided twenty years after *Enloe*, it was not abrogated or overruled by *Enloe*. Petitioner has therefore failed to show cause and prejudice for the default or that failure to consider his claims would result in a miscarriage of justice. Accordingly, this claim is procedurally defaulted from federal habeas review.

2. Prosecutorial Error (claims 4, 7)

In Petitioner's fourth and seventh claims, he argues the prosecution withheld exculpatory evidence from him and also used or failed to correct false testimony that was presented to the jury, giving them multiple false impressions. Specifically, Petitioner argues the prosecution failed to disclose that Maurice Taylor's belt had blood on the inside, which was relevant because it called into question Taylor's position in the car at the time of the murder. Petitioner further argues there were discrepancies between Taylor's trial testimony and the interview he gave police after his arrest. Petitioner also alleges Detective Sexton testified there was no information about other guns in the vehicle the night of the murder, but Taylor's police interview contradicts this testimony.

The state habeas court found the following regarding Petitioner's exculpatory-evidence claim:

32. Applicant states "Neither prior to nor during, Applicant's trial did the Prosecution team ever disclose to Jackson the existence of Taylor's blood stained belt."

33. Applicant's Exhibit 3F, attached to his original application, includes a letter purported to be from Applicant to his Appellate Counsel, dated March 10, 2019.

34. The State does not challenge the admissibility of Applicant's Exhibit 3F.

35. In that exhibit, Applicant directs his appellate counsel to review the video of Maurice Taylor, in which he is seen removing a belt and giving the belt to the police.

36. On June 18, 2018, the Discovery Compliance Statement was filed in this cause.

9

37. On the Discovery Compliance Statement, the Applicant and his trial counsel acknowledge receipt of multiple items of discovery prior to trial, including digital evidence in the form of audio and video recordings of suspect interviews in this case, including an interview of Maurice Taylor.

38. The disclosure of the recording of the interview with Maurice Taylor referenced in the Discovery Compliance Statement is corroborated by Applicant's knowledge of the contents of that video in his letter to appellate counsel.

39. The record indicates that disclosure was made prior to trial that provided notice to Applicant of the existence of a belt worn by Maurice Taylor that was removed and collected at the time of his recorded interview.

40. The Discovery Compliance Statement indicates that Applicant had access to this video in March 2017, more than a year before his trial took place, giving Applicant ample opportunity to know of the existence of the belt and investigate the belt prior to trial.

41. In Ground Five, Applicant asserts that he reviewed the video with trial counsel prior to trial and made notice of the belt.

42. Applicant's claim that the prosecution failed to disclose the existence of the belt is contradicted by the record and by Applicant's assertions in Ground Five.

43. There is no evidence to support a finding that the prosecution suppressed, either willfully or inadvertently, the existence of a belt worn by Maurice Taylor.

44. Ground Four is without merit.

(ECF No. 16-11 at 17-18) (record citations omitted).

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003). The state habeas court denied this claim, concluding that Petitioner's own admissions and the record showed he had access to the evidence regarding Mr. Taylor's belt prior

10

to trial. Petitioner has failed to rebut the state habeas court's findings with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (a state court's factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption through "clear and convincing evidence"). Instead, Petitioner argues he could rebut the findings if the state habeas court had expanded the record to include testimony from former trial prosecutors. But Petitioner's speculation is not, in itself, clear and convincing evidence. Accordingly, the state habeas court's denial of this claim was not unreasonable.

In considering Petitioner's false-testimony claim, the state habeas court first concluded that Petitioner had procedurally defaulted the claim because he failed to raise it on appeal. The state habeas court then addressed the merits and found the following:

> 89. It is common for witnesses in trial to present testimony with minor inconsistencies, which may raise factual questions or questions of credibility, but do not fall within the realm of false testimony. See *Losada v. State*, 721 S.W.2d 305, 312 (Tex. Crim. App. 1986) ("Discrepancies in testimony alone do not make out a case of perjury.")

> 90. Attorney Shepherd [Petitioner's trial counsel] refers to the inconsistencies between Maurice Taylor's trial testimony and police statement as "small details."

> 91. The more significant details of Maurice Taylor's testimony, according to Attorney Shepherd, were corroborated by the videos and cell tower evidence.

> 92. Attorney Shepherd did not assess the discrepancies to be so significant that they undermined the overall credibility of Maurice Taylor, nor did Attorney Shepherd believe the discrepancies to be pertinent to the main issues at trial.

> 93. The discrepancies noted by Applicant in Ground[] Six . . . are not pertinent to the degree that would leave the jury with a false impression of the facts.

> 94. The discrepancies in evidence referred to by Applicant in Ground[] Six . . . [do] not constitute false evidence.

(ECF No. 16-11 at 21-22) (record citations omitted).

In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or allows false testimony to go uncorrected at trial. A petitioner seeking habeas relief based on this type of claim must show (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, the state habeas court held that this claim should have been brought on direct appeal and was subject to denial on that basis alone. The court then concluded that, in the alternative, the claim was meritless because the discrepancies in Mr. Taylor's police interview and trial testimony did not constitute false evidence. *See Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured). In his reply, Petitioner does not offer any evidence to rebut the state court's factual findings, but rather states that the record supports the arguments he has presented. Petitioner has failed to meet his burden and the state court's rejection of this claim was not unreasonable. It is denied.

3. Ineffective Assistance of Trial Counsel (claims 5-6, 8-11)

Six of Petitioner's eleven federal habeas claims are based on allegations that his trial counsel provided constitutionally deficient assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 190). In such cases, the "pivotal question" is not

"whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

> *a. Failure to investigate and discover exculpatory evidence*

In Claim Five, Petitioner argues his trial counsel, Mr. Robb Shepherd, provided ineffective assistance when he failed to investigate Maurice Taylor's bloody belt—despite Petitioner urging him to do so about a month before trial. As a result, Petitioner was unable to confront Mr. Taylor at trial about his position in the car at the time of the murder, how he normally wears his belt, the location of his clothes the night of the murder, how the victim's blood came to be on the inside of his belt, how the victim was lying on Taylor after the shooting, and the state of Petitioner's clothes immediately after the murder.

Mr. Shepherd responded to these allegations in an affidavit filed with the state habeas court:

> I first met in-person with applicant on December 7, 2016, at the Travis County Correctional Complex at Del Valle, Texas. We discussed the murder case that is the subject of this application for writ of habeas corpus. He told me a story about the night of the murder. He said that that night he was driving the Buick in which Kenneth Johnson was murdered. He told me that he parked the Buick outside of a convenience store while he went into the convenience store to sell cocaine. Applicant said that after he sold the cocaine, he came outside and the Buick was gone. He said that he walked back to the Studio 6 suites complex and the Buick was there. He told me that the windows on the passenger side were broken out and there was "something" on the seats. He said he didn't know what the "something" was. He gave no answer as to what he did after that. I asked him what happened to the car (Buick). He shrugged and said he didn't know. It seemed at the time that he was not telling me the truth. Once the Travis County District Attorney's Office turned over the evidence to me, I knew that nothing that applicant told me about his actions on the night of the murder was true. Applicant can clearly be seen on security camera video at the Studio 6 suites, just prior to Kenneth Johnson's murder, directing Maurice Taylor to sit in the back seat of the Buick and directing Kenneth Johnson to sit in the front seat. The same video shows applicant retrieving a handgun from under the hood of the Buick. Cell phone tower evidence tracked the movement of the Buick. During that time, applicant murdered Kenneth Johnson in cold blood and dumped Kenneth Johnson's dead, lifeless body from the Buick onto the street. Applicant then drove to the home (at that time) of Dequincy Fields.

Applicant was video recorded on a Ring® doorbell video at the front door of Dequincy Fields' home just minutes after the murder. Applicant is seen on that video recording lighting a cigarette and turning to his left to look behind himself. When he turned to his left, there can be seen on the right side of his light colored shirt what appears to be a spatter of blood. This is consistent with the statement and testimony of Maurice Taylor, the eyewitness to applicant's murder of Kenneth Johnson. Maurice Taylor recounted exactly what happened on the night of the murder. Maurice Taylor sat in the back seat of the Buick mere feet, if not inches, away from the murder. While Maurice Taylor was no angel himself, Maurice Taylor did in fact tell the absolute truth about what applicant did in the Buick on the night that applicant murdered Kenneth Johnson. I believe that nearly everything that applicant told me about the night of the murder was an absolute lie. In fact, at a bond reduction hearing, applicant even lied to me about applicant's father's name. Applicant chose to tell a lie when it was easier to simply tell the truth.

[Regarding Maurice Taylor's belt:] There is nothing exculpatory about the fact that there was blood on Maurice Taylor's belt. It makes no difference whether the blood was on the inside of the belt or the outside of the belt. Applicant states his convoluted reasoning for the claim that blood on the inside of Maurice Taylor's belt is exculpatory is that it calls into question Maurice Taylor's location in the Buick at the time of the murder. Applicant asserts that the blood on the inside of Maurice Taylor's blet necessarily means that Maurice Taylor was driving. Just prior to the murder of Kenneth Johnson, applicant can clearly be seen in the Studio 6 security video directing Maurice Taylor to sit in the back seat, so applicant does not dispute, and has never disputed, that Maurice Taylor was in the backseat of the Buick when Johnson was murdered. Applicant was the driver. Also, in the Studio 6 security video, applicant can be seen retrieving a handgun, the murder weapon, from under the hood of the Buick before he returns to the driver's seat. Applicant never disputed that applicant was the driver of the Buick. Because there would have been blood all over the inside of the car and its occupants, if anything, the blood on Maurice Taylor's belt, whether on the inside of the belt or on the outside of the belt, corroborates Maurice Taylor's testimony. There is nothing exculpatory about the blood on Maurice Taylor's belt.

(ECF No. 16-11 at 26-27.)

The state habeas court found Shepherd's affidavit credible and then made the following findings of fact:

69. Attorney Shepherd found Applicant to be dishonest with him about the events of the night of the murder based on their initial interview, information he learned upon his review of the other evidence in the case, and during courtroom interactions.

70. Applicant asserts that his trial counsel failed to "investigate the whereabouts of [Maurice] Taylor's belt. His investigation would has revealed Taylor's belt had not been disclosed nor [DNA] tested. Further he would have found the belt had the deceased's blood on the inside."

71. Attorney Shepherd states in his affidavit that "[i]t makes no difference whether the blood was on the inside of the belt or the outside of the belt…Because there would have been blood all over the inside of the car and its occupants, if anything, the blood on Maurice Taylor's belt, whether on the inside of the belt or on the outside of the belt, corroborates Maurice Taylor's testimony."

72. It was not disputed that Maurice Taylor was in close proximity to Kenneth Johnson when Kenneth Johnson was shot; specifically, the shooting occurred while the men occupied the same vehicle.

73. Applicant has failed to articulate how the investigation into the precise location of Kenneth Johnson's blood on Maurice Taylor's belt could have led to any information that would have made any difference to the outcome of the case.

74. It was reasonable for Attorney Shepherd to conclude that further investigation or forensic testing of the belt would not be useful or lead to any new information, and to cease further investigation beyond viewing the belt on video.

75. Ground Five is without merit.

(*Id.* at 19-20) (record citations omitted).

Under *Strickland*, a reasonable investigation requires, at minimum, that trial counsel interviews potential witnesses and makes an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed along with the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Trial counsel also has wide latitude in determining trial strategy. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015). In fact, "[d]efense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)). The Court is mindful that "*Strickland* does not allow second guessing of trial strategy and

must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). Thus, an unsuccessful trial strategy does not mean that counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

The record shows Mr. Shepherd did not believe the blood on the inside of Mr. Taylor's belt was exculpatory but was, if anything, inculpatory as it tended to corroborate Mr. Taylor's story rather than discredit it. Again, Petitioner fails to rebut the state court's findings with clear and convincing evidence. Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable and it is denied.

### b. Failure to interview Laron Caro about the Buick

In Petitioner's sixth ground for relief, he argues Mr. Shepherd provided ineffective assistance when he failed to interview Laron Caro, the individual who took possession of the Buick from Dequincy Fields after the murder and who sold it for scrap metal upon Mr. Fields's instruction. Petitioner argues Mr. Shepherd was ineffective when he failed to interview Caro about the car, obtain a replica of the Buick, and then use this information to impeach Mr. Taylor's testimony about the position of the victim's body after the murder.

Mr. Shepherd responded to his allegation as follows:

The type of seats and the interior of the Buick were irrelevant to applicant's case. What was relevant was that during the shooting of Kenneth Johnson in the Buick bullets from the handgun shattered the passenger side windows. The owner of the Buick, Dequincy Fields, delivered the Buick to Laron Caro. Dequincy Fields at first told Laron Caro to repair the windows. Dequincy Fields decided to instruct Laron Caro to get rid of the Buick. Dequincy Fields wanted the Buick destroyed because the Buick was evidence that tied Dequincy Fields and applicant to the murder of Kenneth Johnson. In fact, Dequincy Fields pleaded guilty and was sentenced for the offense of tampering with physical evidence in connection with his role in ordering the destruction of the Buick.

It would have been an absurd trial strategy to question Laron Caro on the type of seats and interior of the Buick. To do so would only have served to emphasize the

17

fact that the Buick was ordered destroyed for the reason that Kenneth Johnson was shot to death inside of the Buick.

(ECF No. 16-11 at 30.) The state habeas court made the following findings of fact:

76. Applicant asserts that trial counsel failed to sufficiently investigate the crime scene, to-wit: the physical layout of the vehicle in which Kenneth Johnson was murdered, and if he had, there would have been relevant evidence to prove that Maurice Taylor's testimony was physically impossible.

77. Attorney Shepherd stated in his affidavit that "[i]t would have been absurd trial strategy" to draw attention to the type of seats and interior of the Buick, because it would have drawn attention to the destruction of the Buick.

78. Attorney Shepherd additionally stated there was "no strategic advantage to questioning Maurice Taylor on…the position in which Kenneth Johnson's lifeless body laid in the car after applicant shot and killed him."

79. Repeated questioning over the position of Kenneth Johnson's body during the cross-examination of Maurice Taylor, or a reenactment with the use of a replica of the Buick, could have focused the jury's attention on the most gruesome and inflammatory aspects of the case.

80. Any ground gained by the defense in pointing out physical improbabilities with Maurice Taylor's description of the placement of his legs and Kenneth Johnson's lifeless body could have been cancelled out by the prejudice resulting from the focus on those details.

81. Attorney Shepherd's decision not to pursue the strategy of focusing on the physical details of the placement of Kenneth Johnson's body as it was positioned after he was shot in the front seat of the Buick was reasonable.

82. Attorney Shepherd was not unreasonable for failing to conduct a more detailed investigation into the layout of the vehicle or cause a replica to be constructed, because it would not have yielded information that would have been strategically advantageous.

83. Ground Nine is without merit.

(*Id.* at 20-21) (record citations omitted).

Trial counsel chose not to interview or cross-examine Mr. Caro about the Buick because doing so would have only served to emphasize that Dequincy Fields gave Mr. Caro the car because Kenneth Johnson was murdered inside of it. The state habeas court credited Mr. Shepherd's

affidavit and also concluded that any benefit from impeaching Taylor's testimony would have been diminished by focusing on the more gruesome aspects of the crime. Petitioner seeks to rebut the state court's factual findings by arguing they are unreasonable because the state habeas court (1) failed to expand the record and (2) relied on Mr. Shepherd's affidavit which Petitioner believes is not credible. (ECF No. 37 at 14.) Petitioner's rebuttal allegations, however, are conclusory and cannot support an ineffective-assistance claim. *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). The state habeas court's application of *Strickland* to this claim was not unreasonable, and it is denied.

   *c. Failure to lay proper predicate to impeach Maurice Taylor and Nathan Sexton's testimony*

   Petitioner next argues Mr. Shepherd provided ineffective assistance of counsel when he failed to lay the proper predicate to impeach the testimonies of Maurice Taylor and Nathan Sexton. This claim is based on the same factual allegations as Petitioner's claim that the prosecution failed to correct Taylor and Sexton's false testimony.

   Mr. Shepherd responded as follows:

   There was overwhelming evidence that applicant murdered Kenneth Johnson. The State's evidence included a security camera video from Studio 6 on the night of the murder. Just prior to the time of the murder, applicant can be seen directing eyewitness Maurice Taylor to sit in the back seat of the Buick and directing Kenneth Johnson to sit in the front seat. Applicant directed Kenneth Johnson to sit in the front seat because applicant knew and planned that applicant was going to shoot and kill Kenneth Johnson. It can be seen in the video that after applicant directs Kenneth Johnson in the front seat of the Buick, applicant opened the hood of the Buick and retrieved a handgun. The handgun that applicant retrieved from under the hood of the Buick can clearly be seen in applicant's hand. The State used cell phone data to track applicant's movements to the location of the murder, to the location where applicant dumped Kenneth Johnson's body on the street, and back to the home of Dequincy Fields. At the home of Dequincy Fields, applicant can be seen on a Ring® doorbell video appearing at the front door of Dequincy Fields' home with what appeared to be blood on the right side of applicant's shirt. The Ring® doorbell video showed applicant entering the home of Dequincy Fields. A

short time later, applicant exits the home with Dequincy Fields. The two walk in the direction of where the Buick was parked. After a short time, both applicant and Fields walk back to Fields' home. At that time, as captured on the Ring® doorbell video and audio, Fields can be seen and heard saying to applicant, "Damn, prophecy, you worser [sic] than me. I thought I was going to have to get him like that." This clear audio and video capturing the statement by Dequincy Fields to applicant is evidence that the murder of Kenneth Johnson was premeditated. It also proves that after applicant shot and killed Kenneth Johnson and then dumped his lifeless body on a nearby street, applicant drove to Dequincy Fields' home to show the car to Dequincy Fields so that applicant could prove to Dequincy Fields that applicant did in fact murder Kenneth Johnson.

In this ground for relief, applicant refers to small details of Maurice Taylor's statement to police. Applicant ignores the video and audio evidence and cell phone evidence that corroborates Maurice Taylor's statements. There was no way to impeach or call into question or deny what was captured in the video and audio evidence and cell phone evidence.

All of the details to which applicant refers are prejudicial to applicant. At trial, there was absolutely no strategic advantage to questioning Maurice Taylor on the number of guns that applicant carries in his car, the position in which Kenneth Johnson's lifeless body laid in the car after applicant shot and killed him, the fact that Maurice Taylor knew that applicant's killing of Kenneth Johnson was a premeditated murder for hire (a capital offense carrying a potential death sentence), the fact that applicant was yelling, "Why'd you do it? You shouldn't have done it." (This is a reference to applicant's motive for killing Kenneth Johnson on behalf of Dequincy Fields because Kenneth Johnson robbed Dequincy Fields a year before Kenneth Johnson was murdered). If I had questioned Maurice Taylor about these things, and the other things to which applicant refers, it would have only served to further prejudice applicant. Questioning Maurice Taylor on these specific details would also allow the State the opportunity to elicit further prejudicial testimony from Maurice Taylor.

(ECF No. 16-11 at 28-29.) The state habeas court made the following findings of fact:

106. Applicant claims his trial counsel was ineffective for failing to lay the proper predicate to impeach Maurice Taylor and Nathan Sexton.

107. The record of the trial reflects that Attorney Shepherd conducted a thorough and strategic cross-examination of these witnesses.

108. The record reflects that Attorney Shepherd's cross-examination of Maurice Taylor on his prior statement brought out his admission that Taylor had held the gun used to kill Kenneth Johnson.

109. The record reflects that Attorney Shepherd's cross-examination of Maurice Taylor brought out further details about his gang involvement and criminal history.

110. The record refutes Applicant's assertion that his trial counsel failed to effectively attempt to impeach the testimony of Maurice Taylor, or that he failed to lay a predicate to any evidence that should have been admitted to impeach Maurice Taylor or Nathan Sexton.

111. Attorney Shepherd's impeachment of Maurice Taylor's testimony regarding certain specific details would not have changed that fact that Taylor's testimony was largely corroborated by the security footage, Ring video footage, and cell tower data that was presented at trial.

112. Applicant has failed to carry his burden to show that his trial counsel was ineffective regarding the cross-examination of Maurice Taylor or Nathan Sexton.

(*Id.* at 23.)

Under *Strickland*, it is Petitioner's burden to show Mr. Shepherd's performance was deficient; the Court presumes counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22. Additionally, this Court's review is guided by the AEDPA, under which Petitioner must further show that the state court's application of *Strickland* to his claim was unreasonable. *Richter*, 562 U.S at 101. Petitioner, again, has failed to meet this demanding standard. The state court reasonably concluded that Mr. Shepherd's cross-examination of Maurice Taylor and Nathan Sexton was not deficient but was, in fact, beneficial to Petitioner's defense. This claim is denied.

### d. Failure to request certain jury instructions

Petitioner next argues Mr. Shepherd was ineffective when he failed to request or object to the omission of an accomplice witness instruction as well as a limitation on the law of parties instruction in Petitioner's jury charge. Mr. Shepherd responded as follows:

This ground is not logical. Maurice Taylor was not charged as a party to the murder of Kenneth Johnson. Also, only if applicant admits that he was a party to the murder of Kenneth Johnson would a law of parties and the accomplice witness rule apply. Applicant was never charged as a party to the murder. He was charged as the sole

21

actor and perpetrator of the murder of Kenneth Johnson. Does the applicant admit in his writ application that he was a party to the murder of Kenneth Johnson?

(ECF No. 16-11 at 30.) The state habeas court found the following:

> 45. Applicant claims that his trial counsel was ineffective for failing to request or object to the omission of jury charges which would have applied to the testimony of Maurice Taylor.

> 46. The original draft of the jury charge included an accomplice witness instruction.

> 47. This instruction was removed from the charge during the charge conference by agreement of the parties and the Court.

> . . . .

> 55. The defensive trial strategy was to cast the blame exclusively on Maurice Taylor as the sole perpetrator of the homicide since he was the only other person present, not to suggest that he was an accomplice to Applicant.

> 56. No evidence was raised at trial to support the inclusion of the accomplice witness charge to the jury.

> 57. Seeking the accomplice witness charge would have been logically incongruous with the defensive strategy of attempting to cast Maurice Taylor as the sole party responsible for the death of Kenneth Johnson.

> 58. Attorney Robb Shepherd stated in his affidavit that the accomplice witness rule would only be applicable if the defensive strategy involved some admission to the murder, but this was not the strategy employed in this case.

> 59. The affidavit of Attorney Shepherd is credible.

> 60. The defensive strategy, taken in its totality, did not raise sufficient evidence or call into question for the jury whether Maurice Taylor was an accomplice in fact.

> 61. Applicant has not met his burden to show that failing to object to the omission of the accomplice witness rule charge was professionally deficient. *Strickland v. Washington*, 466 U.S. 668 (1984).

(*Id*. at 18-19.)

In his reply, Petitioner argues that Mr. Shepherd's failure to add the accomplice witness instruction prejudiced him because it was his only viable defense. But, as Shepherd's affidavit

attests, the defensive strategy at trial was to shift blame for the murder from Petitioner to Taylor. As a result, requesting an accomplice witness or law of the parties jury instruction would have undermined Petitioner's theory of the case, i.e., that it was Taylor alone who murdered the victim. This is what the state habeas court found in denying Petitioner's claim and Petitioner has failed to rebut these findings with clear and convincing evidence. The state habeas court's application of *Strickland* to this claim was not unreasonable and it is denied.

   *e. Failure to object to introduction of Maurice Taylor's Grand Jury no-bill*

   Petitioner next argues Mr. Shepherd provided ineffective assistance of counsel when he failed to object to the admission of evidence that Maurice Taylor had not been indicted by the Grand Jury. Petitioner argues the admission of this evidence was prejudicial because it solidified the state's argument that Taylor and Detective Sexton's theory of the murder was correct.

   Mr. Shepherd responded to this allegation as follows:

> All of the overwhelming evidence of applicant's guilt was prejudicial to applicant. That is why applicant was convicted of murder and sentenced to ninety-nine years in prison. The grand jury no bill of Maurice Taylor's complicity in the murder of Kenneth Johnson was relevant to show what happened to the criminal charge against Maurice Taylor because it showed the jury what Maurice Taylor received in exchange for his testimony, and, therefore, the grand jury no bill of Maurice Taylor's murder charge was relevant for applicant's defense.

(ECF No. 16-11 at 30.) The state habeas court made the following findings of fact:

> 114. Applicant claims his counsel was ineffective for failing to object to State's Exhibit 84, which was the grand jury no-bill following its investigation of Maurice Taylor.

> 115. As discussed previously, whether Maurice Taylor was subject to prosecution was relevant to ascertain whether he was an accomplice as a matter of law.

> 116. Attorney Shepherd stated Exhibit 84 was relevant "because it showed the jury what Maurice Taylor received in exchange for his testimony."

> 117. At trial, Attorney Shepherd argued to the jury that the grand jury's no bill was the reward gained by Maurice Taylor in exchange for the statement he gave to

police, and that the police were eager to pin the murder on Applicant and "Mr. Big," a third party.

118. The reliance on the grand jury no-bill as evidence of Maurice Taylor's self-interest and bias was with the wide range of reasonable professional judgment.

119. Applicant has failed to carry his burden to show that the failure to object to Exhibit 84 constituted ineffective assistance of counsel.

(*Id*. at 23-24) (record citations omitted).

As the Court previously noted, trial counsel has wide latitude in determining trial strategy, *Ward*, 777 F.3d at 264, and their strategic choices—made after investigating the law and facts in the case—are virtually unchallengable on federal review of a state court conviction, *Mejia*, 906 F.3d at 316. Further, an unsuccessful trial strategy—in this instance, attempting to cast blame on Mr. Taylor as the murderer—does not mean counsel's performance was deficient. *Avila*, 560 F.3d at 314. Adding an accomplice-witness instruction to the jury charge would have required Petitioner to admit some responsibility for the murder, which he continues to deny. The state habeas court's conclusion that Mr. Shepherd was not deficient for failing to request an instruction that would have undermined the defensive theory of the case was not unreasonable. This claim is denied.

### f. Failure to object to State's closing argument

In Petitioner's final claim based on ineffective assistance of counsel, he argues Mr. Shepherd provided ineffective assistance when he failed to object to the prosecution's statement during closing argument that Petitioner's "calling card" was a 9mm gun, which allowed the jury to speculate about matters outside of the record and only served to inflame the jury. Mr. Shepherd responded as follows:

This jury argument was a proper jury argument as a reasonable inference from the evidence. It was a reasonable inference because when applicant was arrested for this murder a handgun was found under the hood of the car he was driving at the

24

time of his arrest. The gun was found in the same location under the hood of the car as the handgun applicant retrieved from under the hood of the Buick applicant was driving on the night of Johnson's murder. This can clearly be seen in the Studio 6 security video. The "calling card" was not the handgun itself, but rather the location in which applicant hid handguns in the vehicles that applicant drove.

(ECF No. 16-11 at 28). The state habeas court made the following factual findings:

97. Counsel is not ineffective for failing to raise a frivolous claim or make a futile objection. See *Kinnamon v. State*, 791 S.W.2d 84, 97 (Tex. Crim. App. 1990).

98. Proper jury argument encompasses pleas for law enforcement, a summation of the evidence presented at trial, reasonable deductions from the evidence, and responses to arguments of opposing counsel. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).

99. Applicant claims that the prosecutor's reference to a 9mm gun as his "calling card" during closing argument was improper, and his counsel was ineffective for failing to object.

100. Video evidence admitted at trial depicted Applicant pulling a gun from the hood of the Buick Applicant drove on the night of the murder.

101. The evidence admitted at trial revealed that when Applicant was arrested on a different date and while driving a different vehicle, police recovered a firearm from under the hood.

102. Attorney Shepherd understood the comment about the "calling card" to refer to Applicant's demonstrated practice of twice hiding handguns under the hood of vehicles he was driving.

103. The prosecutor's drawing of the jury's attention to two instances where Applicant was driving a vehicle with a gun hidden under the hood and referring to that as a "calling card," where the evidence of the two instances was admitted at trial, was proper summation of the evidence and/or a reasonable deduction from the evidence.

104. It was not professionally deficient for Attorney Shepherd to consider this comment proper and raise no objection. See *Kinnamon v. State*, 791 S.W.2d 84, 97 (Tex. Crim. App. 1990).

(*Id.* at 24-25) (record citations omitted).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694. The state habeas court concluded that the State's reference to Petitioner's "calling card" was proper summation of the evidence and/or reasonable deduction from the evidence. As such, any objection would have likely been overruled. Counsel is not ineffective for failing to lodge objections that would be overruled. *See Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012). Petitioner fails to rebut the state's factual findings with clear and convincing evidence, and therefore fails to show the state habeas court's application of *Strickland* was unreasonable. This claim is denied.

4. Ineffective Assistance of Appellate Counsel (claims 2-3)

Petitioner's final two claims are based on allegations that his appellate counsel provided ineffective assistance during his direct criminal appeal. Specifically, Petitioner argues that his appellate counsel was ineffective when counsel failed to move for a new trial based on (1) Mr. Shepherd's ineffective assistance during trial and (2) the defective indictment. He further argues that appellate counsel provided ineffective assistance when counsel deprived Petitioner of client autonomy by failing to file Petitioner's pro se motions for a new trial based on Mr. Shepherd's ineffective assistance and the defective indictment.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*,

528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

The state habeas court found both of Petitioner's claims to be without merit. As for the appellate counsel's failure to file a motion for new trial or motion in arrest of judgment, the court concluded that such motions would not have been successful because Petitioner had failed to establish Mr. Shepherd's ineffective assistance and, further, his arguments for the defective indictment would not have been successful. As for Petitioner's claim that his appellate counsel had violated Petitioner's client autonomy by not filing his pro se motions, the court found the claim meritless "[b]ecause there is no evidence to demonstrate that appellate counsel refused to honor Applicant's autonomy over a decision concerning a potentially meritorious post-conviction motion for relief in the trial court or that there was a[n] intractable disagreement about the fundamental objective of Applicant's representation." (ECF No. 16-11 at 14-15.)

The state habeas court's conclusion that that these claims are meritless is not unreasonable. The record shows that Mr. Shepherd did not provide ineffective assistance and the court's conclusion that the indictment argument would not have been successful is not unreasonable. Further, Petitioner's reliance on *McCoy v. Louisiana* in support of his client-autonomy claim is misplaced: that case holds that counsel must abide by a defendant's choice to maintain his innocence, but also reiterates that "'numerous choices affecting conduct of the trial' do not require client consent, including 'the objections to make, the witnesses to call, and the arguments to advance.'" 138 S. Ct. 1500, 1509 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 249

(2008)). Petitioner has not shown that the state court's interpretation of *McCoy* as not requiring appellate counsel to file meritless post-conviction motions was unreasonable. Accordingly, this claim is also denied.

5. Motion to Stay

Finally, Petitioner has filed a Motion to Stay, stating he has a pending state-court personal-injury case related to his federal habeas writ, and that he recently moved to amend his petition and initiate new proceedings in the convicting court. (ECF No. 38.) Respondent opposes the motion, arguing it would be an abuse of discretion for this Court to permit Petitioner to stay his habeas proceedings in order to exhaust additional future claims in state court. (ECF No. 39.)

In determining whether to grant a stay, the Court examines three factors: (1) whether there was good cause for Petitioner's failure to exhaust his claims first in state court before proceeding in federal court, (2) whether Petitioner's unexhausted claims are plainly meritless, and (3) whether Petitioner has engaged in abusive litigation tactics, intentional delay, or has exercised due diligence. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); *see also Young v. Stephens*, 795 F.3d 484, 494-95 (5th Cir. 2015) ("A stay and abeyance should be available only in limited circumstances because staying a federal habeas petition frustrates AEDPA's objective of encouraging finality . . . and streamlining federal habeas proceedings.") (citing and quoting *Rhines*, 544 U.S. at 269, 277).

Petitioner has failed to show his entitlement to a stay under *Rhines*. First, Petitioner does not show good cause for failing to exhaust his claims in state court; indeed, Petitioner does not even describe what claims he is seeking to exhaust in his amended petition before the convicting court. In terms of his personal injury lawsuit, Petitioner states he filed a civil lawsuit against his appellate attorney based on his negligence during Petitioner's direct appeal. (ECF No. 30.)

However, a personal-injury lawsuit would not exhaust Petitioner's claims for purposes of the AEPDA.

Second, because Petitioner does not state what claims his is bringing in his amended state-court petition, the Court is unable to discern whether Petitioner has good cause for failing to exhaust these claims. It is also not apparent from the record whether Petitioner is intentionally delaying the adjudication of his federal habeas petition or if he has been exercising due diligence. Because there is no evidence to support Petitioner's motion for abatement, it is denied. To grant Petitioner's stay would frustrate the goals of the AEDPA concerning finality, reducing delays, and could provide other petitioners an incentive not to exhaust. *Rhines*, 544 U.S. at 276-77.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is further **ORDERED** that Petitioner's Motion to Stay (ECF No. 38) is **DENIED**; and

It is finally **ORDERED** that a certificate of appealability shall not issue in this case.

SIGNED this 12th day of October, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE